**CT Corporation**

**Service of Process Transmittal**
07/30/2010
CT Log Number 517037650

**TO:** Elise Bigelow
Apple Inc.
One Infinite Loop, MS 81-2SU
Cupertino, CA 95014-

**RE:** **Process Served in California**

**FOR:** Apple Inc. (Domestic State: CA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Christopher DeRose, Individually and on Behalf of All Others Similarly Situated, Pltf. vs. Apple Inc., etc., Dft. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Request, Certificate(s) of Service, Notice, Verification Form(s) |
| **COURT/AGENCY:** | In The Circuit Court of The Seventeenth Judicial Circuit, FL<br>Case # 1031020 |
| **NATURE OF ACTION:** | Product Liability Litigation - Manufacturing Defect - Class Action - Failure to warn about defective iPhone 4, defects have caused them to not functionproperly as a cellular communication device |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 07/30/2010 at 14:37 |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after service, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Cullin A. O'Brien<br>Robbins Geller Rudman & Dowd LLP<br>120 E. Palmetto Park Road<br>Suite 500<br>Boca Raton, FL 33432<br>561 750 3000 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex Priority Overnight , 790229509573<br>Image SOP<br>SOP Papers with Transmittal, via Fax, Elise Bigelow 408-974-9316<br>Email Notification, Elise Bigelow EBIGELOW@APPLE.COM<br>Email Notification, Adeline Yu ayu@apple.com<br>Email Notification, Jeff Risher jrisher@apple.com<br>Email Notification, Diane Warkentin dwarkentin@apple.com<br>Email Notification, Chris Kyriacou kyriacou@apple.com<br>Email Notification, Lisa Olle olle@apple.com<br>Email Notification, Anh Nguyen aknguyen@apple.com<br>Email Notification, Alexa Froessl afroessl@apple.com<br>Email Notification, Noreen Krall nkrall@apple.com<br>Email Notification, David Melaugh melaugh@apple.com<br>Email Notification, Jayna Whitt jwhitt@apple.com<br>Email Notification, Katie Prescott kprescott@apple.com<br>Email Notification, Iain Cunningham icunningham@apple.com<br>Email Notification, Colleen Brown colleen_brown@apple.com |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

 CT Corporation

**Service of Process Transmittal**
07/30/2010
CT Log Number 517037650

**TO:** Elise Bigelow
Apple Inc.
One Infinite Loop, MS 81-2SU
Cupertino, CA 95014-

**RE:** **Process Served in California**

**FOR:** Apple Inc. (Domestic State: CA)

| | |
|---|---|
| **SIGNED:** | C T Corporation System |
| **PER:** | Nancy Flores |
| **ADDRESS:** | 818 West Seventh Street |
| | Los Angeles, CA 90017 |
| **TELEPHONE:** | 213-337-4615 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

CHRISTOPHER DeROSE, Individually and
on Behalf of All Others Similarly Situated,

        Plaintiff,

vs.

APPLE INC., a California Corporation,

        Defendants.

_____/

Case No.: **1 0 3 1 0 2 0**

CLASS REPRESENTATION

JURY TRIAL DEMANDED

**14**

## SUMMONS

THE STATE OF FLORIDA
To Each Sheriff of the State:

    YOU ARE COMMANDED to serve this summons and a copy of the complaint or petition in this lawsuit on Defendant:

**APPLE INC.**

by serving its Registered Agent:

    CT Corporation System
    818 West Seventh Street
    Los Angeles, CA 90017

    Each Defendant is required to serve written defenses to the complaint or petition on ROBBINS GELLER RUDMAN & DOWD LLP, plaintiff's attorney, whose address is 120 E. Palmetto Park Road, Suite 500, Boca Raton, FL 33432, within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition. JUL 2 9 2010

DATED on July _____, 2010

                    HOWARD C. FORMAN
                    CLERK OF THE CIRCUIT COURT

        By:_____
                    LASHON Z. BYNES
                    As Deputy Clerk

                    A TRUE COPY
                    Circuit Court Seal

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

CHRISTOPHER DeROSE, Individually and
on Behalf of All Others Similarly Situated,

     Plaintiff,

vs.

APPLE INC., a California Corporation,

     Defendant.

_____/

Case No.:

**10   31020**

CLASS REPRESENTATION

JURY TRIAL DEMANDED

**14**

<u>**CLASS ACTION COMPLAINT**</u>

A TRUE COPY

JUL 2 9 2010

HOWARD C. FORMAN
CLERK OF CIRCUIT COURT
BROWARD COUNTY, FL

Plaintiff Christopher DeRose ("Plaintiff"), individually and on behalf of all others similarly situated, for his Class Action Complaint, hereby sues Defendant Apple Inc. ("Apple" or "Defendant") and alleges as follows:

## NATURE OF THE ACTION

1.      This is a class action suit brought on behalf of Plaintiff and other similarly situated Florida consumers who purchased Apple's iPhone 4 (the "iPhone 4").

2.      Apple designed, manufactured, marketed, advertised, and warranted the iPhone 4 to consumers nationwide, including in Florida.  In conjunction with each sale, Defendant marketed, advertised and warranted that each iPhone 4 was fit for the ordinary purpose for which such goods are used and was free from defects in materials and workmanship.

3.      Defendant knew or should have known that the iPhone 4s were defective in design and/or manufacture, were not fit for their ordinary and intended use, and did not perform in accordance with the advertisements, marketing materials and warranties disseminated by Defendant. In addition, Defendant knew or should have known that the iPhone 4s do not conform with the reasonable expectations of ordinary Florida consumers.

4.      Specifically, the iPhone 4s contain a defect that results in the quick loss or reduction of cellular and wireless reception and performance when handling the phones as demonstrated in Apple's own advertisements or as a reasonable person would handle a mobile telephone while making phone calls, browsing the Internet, sending text messages, or utilizing other services provided by the iPhone 4.

5.      Defendant knew and has admitted that the iPhone 4s  were defectively designed. Indeed, Apple Chairman and CEO Steve Jobs ("Jobs") recently (and snidely) remarked, "Just avoid holding it in that way," and Apple has announced that the reception defect may be eliminated by the purchase – for another $29.00 – of a rubber "bumper" that wraps around the iPhone 4.

6.      Then, at Apple's well-publicized news conference on July 16, 2010, Jobs stated the following: "We're not perfect. We know that. You know that. And [our] phones aren't perfect either. . . . We've been working our butts off to understand what the real problems are."[1] Jobs further conceded, "When we look at this data, its very hard to escape the conclusion that there is a problem . . . ."

7.      As a result of the defect in the iPhone 4s, Plaintiff and the Class have suffered damages, in that they purchased and/or own iPhone 4s that they would not otherwise have bought and/or owned had they known of the defect, and they have been or will be forced to purchase additional accessories to be able to properly utilize the iPhone 4 for its intended purpose, and purchased and/or own iPhone 4s that are not worth the price paid.

## JURISDICTION AND VENUE

8.      This action is brought as a class action pursuant to Florida Rule of Civil Procedure 1.220.

9.      The damages suffered and sought to be recovered herein total, in the aggregate, in excess of the minimum jurisdictional limits of this Court. Plaintiff's individual claims do not exceed the sum or value of $75,000.00.

10.     Venue is proper in Broward County, Florida because the causes of action asserted herein occurred and/or accrued, among other places, in Broward County, Florida. Venue is also appropriate in this Court because Defendant conducts substantial business in Broward County and has targeted consumers to purchase its products and has advertised in various media in Broward County. Apple has retail stores in Broward County, Florida.

---

[1]     *See* Apple's Answer to Antennagate: Free iPhone 4 Cases, http://www.wired.com/gadgetlab/ 2010/07/iphone-4/ (last visited July 23, 2010).

- 2 -

11.     This action is not removable pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332 (2005), pursuant to *Cappuccitti v. DirecTV, Inc.*, No. 09-14107, 2010 WL 2803093, at *5 (11th Cir. July 19, 2010).

## THE PARTIES

12.     Plaintiff is a citizen and resident of the State of Florida.

13.     Defendant Apple is a California corporation with its headquarters and principal place of business in Cupertino, California. Apple is the designer, manufacturer and creator of the iPhone 4. Apple transacts substantial business throughout the State of Florida, through advertising, marketing, and the ownership of Apple Retail Stores in several Florida locations, including in Broward County, where many members of the Class purchased their iPhone 4s.

## SUBSTANTIVE ALLEGATIONS COMMON TO ALL COUNTS

14.     Apple manufactures, designs, produces and sells several types of electronic products, including, among others, personal computers, portable music players, cellular phones, and other communication devices. Among these products is the well-known iPhone, launched in 2007.

15.     AT&T sells mobile telephones throughout the nation, and is the exclusive provider of mobile telephone service to iPhone 4 purchasers in the United States. As part of the Plaintiff's iPhone 4 purchase, Plaintiff was also required to purchase a two-year service contract from AT&T.

16.     On June 7, 2010, at Apple's Worldwide Developers Conference ("WWDC"), Apple announced that its newest version of the iPhone – the iPhone 4 – would be released beginning on June 24, 2010.

17.     On or about June 24, 2010, Plaintiff purchased an iPhone 4 32GB from the Apple Store in Broward County, Florida.

18.     Prior to the release of the iPhone 4 devices, Defendant engaged in a lengthy and extensive global advertising campaign to market the iPhone 4.

- 3 -

19.   As part of that advertising and marketing campaign, Apple made multiple claims that its new device would have improved reception and provide improved service to consumers.

20.   Indeed, at the WWDC, Steve Jobs boasted about the new engineering miracle with the iPhone 4's antenna design, which now would hold the antenna around the outside of the device, as demonstrated in this photo of Jobs making his presentation at the WWDC:



21.   In many of Apple's text and video advertisements, individuals are shown experiencing strong reception and positive performance while holding the iPhone 4 in a normal manner, including placing the user's hand around the sides and bottom of the iPhone 4, thus making contact with the iPhone 4's antennas.

22.   To date, Apple has sold over 2 million iPhone 4 units, making it the most successful product launch ever for Apple, in terms of units sold.

23.   Nevertheless, almost immediately after the purchase of his iPhone 4, Plaintiff began to experience significantly reduced reception and performance when handling the phones as

demonstrated in Apple's advertisements or as a reasonable person would handle a mobile telephone while making phone calls, browsing the Internet, sending text messages, or utilizing other services provided by the iPhone 4.

24.     Upon information and belief, Plaintiff's reception problems are not unique and that individuals across the country have experienced similar problems following their purchase of the iPhone 4.

25.     These problems are, without question, the result of the iPhone 4's defective design and/or manufacture.

26.     Indeed, it appears clear that Defendant had actual or constructive knowledge of the iPhone 4's design and/or manufacturing defect(s) prior to its distribution. This is evident by the fact that the "bumper" sold by Defendant to reduce the reception problems on the iPhone were made available – for $29 a pop – nearly immediately after the iPhone 4 launch date, which look like the following picture:



27.     As part of its face-saving campaign, Apple has since agreed to provide a "free" bumper to iPhone 4 owners, thus admitting that it created, designed and manufactured a defective

product, and making consumers essentially choose between an aesthetically-pleasing new iPhone 4 with reception problems, *or* a much less aesthetically-pleasing new iPhone 4 with, Apple claims, better reception.

28.    As a direct result of the iPhone 4's design and/or manufacturing defect(s), Plaintiff has been unable to reliably use his iPhone 4 device for his intended purpose, and the device has not conformed to Plaintiff's expectations.

29.    Incredibly, on the very day of the iPhone 4's launch, June 24, 2010, a new iPhone 4 owner e-mailed Steve Jobs, Chairman and CEO of Apple, expressing his concern over the iPhone 4's reception. In the e-mail, titled "Your new antenna system doesn't like my hand," the iPhone 4 owner wrote "I love my new iPhone 4 [nice work] but when I put my hand on the steel bands I lose all reception. It appears to be a common issue. Any plans to fix this?"

30.    In response to this Class member's e-mail, Jobs responded with a curt "Just avoid holding it in that way." According to Gizmodo.com, Jobs also reportedly responded to other complaining iPhone 4 users by stating that "its not a big issue" and "You are in a marginal cell area. It has nothing to do with the phone."

31.    Despite Jobs' public denials, on June 29, 2010, Boy Genius Report, a Technology Blog/Website ("Boy Genius"), reported that AppleCare representatives were provided instruction by Defendant Apple on how to address callers complaining about iPhone 4 reception problems.

32.    Boy Genius also reported that Apple had instructed its representatives to inform iPhone 4 owners that "The iPhone 4's wireless performance is the best we have ever shipped." And that "If you are experiencing [reduced reception] on your iPhone 4, avoid covering the black strip on the lower-left corner of the metal band."

33.    Further, Boy Genius reported that "The use of a case or Bumper that is made out of rubber or plastic may improve wireless performance by keeping your hand from directly covering these areas."

34.    Despite Apple's apparent belief that the use of a case may remedy the inherent flaw in their iPhone 4 device, Boy Genius further reported; based on internal Apple communications, that "WE [APPLE] ARE NOT appeasing customers with free bumpers — DON'T promise a free bumper to customers."

35.    In addition, Boy Genius reported that, should an iPhone 4 customer complain about reception problems, Apple representatives are to specifically respond that "it is not the metal band."

36.    Shockingly, also according to Boy Genius, Apple instructed its employees that they were not to perform warranty service on the reception problems, telling them, "Do not perform warranty service."

37.    The actual AppleCare "talking points" discussed in the Boy Genius Report is demonstrated here:

38.    On June 30, 2010, AnandTech, Inc. ("AnandTech") published a story entitled, "The Real Story on iPhone 4's Antenna." This is what AnandTech found; inter alia:

(a)      as with all external antennas, the potential for both unintended attenuation and detuning is much, much greater;

(b)      anything conductive which bridges the gap in the bottom left [of the iPhone 4] couples the antennas together, detuning the precisely engineered antennas.  Its a problem of impedance matching with the body as an antenna, and the additional antenna that becomes part of the equation when you touch the bottom left;

(c)      The fact of the matter is that cupping the bottom left corner and making skin contact between the two antennas does result in a measurable difference in cellular reception;

(d)      Holding the iPhone 4 without a case, in your left hand, crossing the black strip can result in a worst case drop of 24 dB in signal;

(e)      Add in an external antenna you're essentially forced to touch and bridge to another adjacent antenna while holding, and the signal attenuation is even worse.  The fact of the matter is that either the most sensitive region of the antenna should have an insulative coating, or everyone should use a case.  For a company that uses style heavily as a selling point, the latter isn't an option.  And the former would require an unprecedented admission of fault on Apple's part; and

(f)      The drop in signal from holding the phone with your left hand arguably remains a problem.  Changing the bars visualization may indeed help mask it, and to be fair the phone works fine all the way down to -113 dBm, but it will persist – software updates can change physics as much as they can change hardware design.  At the end of the day, Apple should add an insulative coating to the stainless steel band, or subsidize bumper cases.  Its that simple.

39.      At Apple's well-publicized news conference on July 16, 2010, Jobs stated the following: "We're not perfect. We know that. You know that. And [our] phones aren't perfect either.

. . . We've been working our butts off to understand what the real problems are."[2] Jobs further conceded, "When we look at this data, its very hard to escape the conclusion that there is a problem . . . ."

40.     Thus, Apple has admitted its liability to Plaintiff and the Class.

## CLASS REPRESENTATION ALLEGATIONS

41.     Plaintiff brings this action as a class action pursuant to Florida Rules of Civil Procedure 1.220(a) and 1.220(b) on behalf of himself and all others similarly situated as members of the following class:

*All persons who purchased the Apple iPhone 4 in the State of Florida* (the "Class").

Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.   Specifically excluded from the proposed Class are the Defendant, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by the Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with the Defendant and/or their officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

42.     *Numerosity.* The members of the Class are so numerous that their individual joinder is impracticable.  Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contain many tens of thousands of members.  The precise number of Class members is unknown to

---

[2]     *See* Apple's Answer to Antennagate: Free iPhone 4 Cases, http://www.wired.com/gadgetlab/2010/07/iphone-4/ (last visited July 23, 2010).

Plaintiff. The true number of Class members are known by the Defendant, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice.

43.     *Existence and Predominance of Common Questions of Law and Fact.* Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

(a)     whether the claims discussed above are true, or are misleading, or reasonably likely to deceive;

(b)     whether Defendant's alleged conduct violates public policy;

(c)     whether the alleged conduct constitutes violations of the laws asserted herein;

(d)     whether Defendant engaged in false or deceptive advertising;

(e)     whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss; and

(f)     whether Plaintiff and Class members are entitled to declaratory and injunctive relief.

44.     *Typicality.* Plaintiff's claims are typical of the claims of the members of the Class in that the Defendant manufactured, sold, warranted, and marketed a defectively designed iPhone 4 to Plaintiff, like all other members of the Class.

45.     *Adequacy of Representation.* Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel highly experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

46.     *Superiority.* A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by

- 10 -

individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the Defendant. It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

47.    In the alternative, the Class may be also certified because:

(a)    'the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendant;

(b)    the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)    Defendant has acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

48.    The claims asserted herein are applicable to all consumers throughout the United States who purchased the iPhone 4.

49.     Adequate notice can be given to Class members directly using information maintained in Defendant's records or through notice by publication.

50.     Damages may be calculated from the claims data maintained in Defendant's records, so that the cost of administering a recovery for the Class can be minimized. However, the precise amount of damages available to Plaintiff and the other members of the Class is not a barrier to class certification.

## COUNT I

### Negligence

51.     Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

52.     By virtue of aforementioned acts of Defendant, Defendant in designing, manufacturing, marketing, and distributing the iPhone 4 had a duty to Plaintiff to do so in a reasonable manner and to ensure that the product was without defect.

53.     Defendant knew or reasonably should have known of the iPhone 4's defective nature prior to placing the iPhone 4 into the stream of commerce.

54.     Defendant breached its duty to Plaintiff by placing the defective product into the stream of commerce.

55.     As a direct and proximate result of Defendant's negligence, the defective iPhone 4 has caused economic injury to Plaintiff and all Class members.

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for relief and judgment against Defendant as follows:

A.     For an order certifying the Class under the appropriate provisions of Rule 1.220, as well as any appropriate subclasses, and appointing Plaintiff and his legal counsel to represent the Class;

B.      Awarding damages sustained by Plaintiff and the Class as a result of Defendant's negligence;

C.      For pre- and post-judgment interest to the Class, as allowed by law;

D.      For reasonable attorneys' fees and costs to counsel for the Class if and when pecuniary benefits are obtained on behalf of the Class; and

E.      Granting such other and further relief as is just and proper.

## COUNT II

### Defect in Design, Manufacture and Assembly

56.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-50 as if fully set forth herein.

57.     The iPhone 4s were not reasonably fit, suitable, or safe for their intended use by reason of a defect in their design, manufacture, or assembly, which caused them to not function properly as a cellular communication device.

58.     The defect in design, manufacture, or assembly existed at the time Apple placed the iPhone 4 units into the stream of commerce.

59.     The iPhone 4s were used in their intended manner when they failed to function properly and, as a result, have caused economic damage and harm to Plaintiff.

60.     As a direct and proximate result thereof, Plaintiff has been injured and damaged.

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for relief and judgment against Defendant as follows:

A.      For an order certifying the Class under the appropriate provisions of Rule 1.220, as well as any appropriate subclasses, and appointing Plaintiff and his legal counsel to represent the Class;

- 13 -

B.      Awarding damages sustained by Plaintiff and the Class as a result of Defendant's unlawful conduct;

C.      For pre- and post-judgment interest to the Class, as allowed by law;

D.      For reasonable attorneys' fees and costs to counsel for the Class if and when pecuniary benefits are obtained on behalf of the Class; and

E.      Granting such other and further relief as is just and proper.

## COUNT III

### Breach of Express Warranty

61.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-50 as if fully set forth herein.

62.     The advertisements, model and sample, and other similar uniform representations disseminated by Apple regarding the iPhone 4 were, and are, affirmations of fact and/or promises with regard to the performance and quality of the product. These advertisements, model and sample, and other similar representations, formed, in whole or in part, the basis of the bargain between Apple and members of the Class, and constituted express warranties that the iPhone 4 would conform thereto. As described above, Class members' iPhone 4s did not conform with these warranties, representations, model and sample.

63.     Apple provided limited warranties to Plaintiff and other members of the Class, which Apple breached and failed to honor. The time and content limitations contained in those limited warranties were also unconscionable and grossly inadequate to protect Plaintiff and the other members of the Class. Among other things, Class members had no meaningful choice in determining those time and content limitations; the terms of the limited warranties unreasonably favored Apple over members of the Class; a gross disparity in bargaining power existed as between

- 14 -

Apple and members of the Class; and Apple knew the iPhone 4s were defective and would fail to provide the promised cellular reception.

64. By virtue of its knowledge of the defect and its knowledge of the experience of owners of the iPhone 4s who complained of the defect described herein, as well as the numerous state and federal court complaints filed and served on Apple, Apple has received notice of the breach of the warranties.

65. The element of privity, if applicable, exists between Apple and members of the Class because, *inter alia*: (i) Apple has had direct written communications with members of the Class with regard to the iPhone 4s in the form of standardized warranty forms and registration cards; (ii) Apple has had direct communications with members of the Class with regard to the iPhone 4s through television, newspaper, and magazine advertisements; (iii) the Apple Retail Stores directly sold the iPhone 4s to the Class; and (iv) Apple has entered into contracts with members of the Class in connection with the assurance of warranties; and (v) Plaintiff and members of the Class are third-party beneficiaries of warranties that ran from Apple to its agents, the dealers and sellers of Apple products.

66. As a result of the foregoing, Plaintiff and the Class members have suffered damages that were directly and proximately caused by the defective iPhone 4s.

67. Moreover, upon information and belief, Apple acted and continues to act in an identical or substantially similar manner with respect to the entire putative Class by continuing to manufacture, warrant, and sell defective iPhone 4s and by providing wholly inadequate remedies to consumer complaints.

68. Plaintiff and members of the Class have suffered harm and, absent extraordinary relief from this Court, Plaintiff will continue to suffer irreparable harm through Apple's conduct of continuing to market, warrant, and place defective iPhone 4s on the market. Damages will not be an

adequate remedy at law because, although Plaintiff has suffered injury, Apple continues to place its defective products on the market and provide wholly inadequate remedies to consumer complaints.

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for relief and judgment against Defendant as follows:

A.      For an order certifying the Class under the appropriate provisions of Rule 1.220, as well as any appropriate subclasses, and appointing Plaintiff and his legal counsel to represent the Class;

B.      Awarding actual and consequential damages;

C.      Granting injunctive relief;

D.      For pre- and post-judgment interest to the Class, as allowed by law;

E.      For reasonable attorneys' fees and costs to counsel for the Class if and when pecuniary and/or non-pecuniary benefits are obtained on behalf of the Class; and

F.      Granting such other and further relief as is just and proper.

## COUNT IV

### Breach of Implied Warranty

69.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-50 as if fully set forth herein.

70.     Apple impliedly represented and warranted that the iPhone 4s were free of defects, were merchantable, and were fit for their intended purpose.

71.     Apple breached these representations and implied warranties. Apple made and/or allowed these misrepresentations to be made with the intent of inducing members of the Class to purchase iPhone 4s. If Plaintiff and members of the Class had known the true facts regarding the defective condition of the iPhone 4s, they would not have purchased iPhone 4s or paid as much money for the iPhone 4s.

- 16 -

72.     By virtue of its knowledge of the defect and of the experience of purchasers and/or owner of the iPhone 4s who complained thereof, as well as the numerous state and federal court complaints filed and served on Apple, Apple has received notice of the breach of the warranties, Apple has received notice of the breach of the warranties.

73.     The element of privity, if applicable, exists between Apple and members of the Class because, *inter alia*: (i) Apple has had direct written communications with members of the Class with regard to the iPhone 4s in the form of standardized warranty forms and registration cards; (ii) Apple has had direct communications with members of the Class with regard to the iPhone 4s through television, newspaper, and magazine advertisements; (iii) the Apple Retail Stores directly sold the iPhone 4s to the Class; and (iv) Apple has entered into contracts with members of the Class in connection with the assurance of warranties; and (v) Plaintiff and members of the Class are third-party beneficiaries of warranties that ran from Apple to its agents, the dealers and sellers of Apple products.

74.     The damages suffered by Plaintiff and the Class were directly and proximately caused by the defective iPhone 4s.

75.     Moreover, upon information and belief, Apple acted and continues to act in an identical or substantially similar manner with respect to the entire putative Class by continuing to manufacture, warrant, and sell defective iPhone 4s and by providing wholly inadequate remedies to consumer complaints.

76.     Plaintiff and members of the Class have suffered harm and, absent extraordinary relief from this Court, Class members will continue to suffer irreparable harm through Apple's conduct of continuing to market, warrant, and place defective iPhone 4s on the market. Damages will not be an adequate remedy at law because, although Plaintiff has suffered injury, Defendant

continues to place its defective products on the market and provide wholly inadequate remedies to consumer complaints.

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for relief and judgment against Defendant as follows:

A.     For an order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiff and his legal counsel to represent the Class;

B.     Awarding actual and consequential damages;

C.     Granting injunctive relief;

D.     For pre- and post-judgment interest to the Class, as allowed by law;

E.     For reasonable attorneys' fees and costs to counsel for the Class if and when pecuniary and/or non-pecuniary benefits are obtained on behalf of the Class; and

F.     Granting such other and further relief as is just and proper.

## COUNT V

### Violations of Florida's Unfair and Deceptive Trade Practices Act
### Fla. Stat. §§501.201, *et seq.*

77.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-50 as if fully set forth herein.

78.     Plaintiff brings this claim pursuant to Florida's Unfair and Deceptive Trade Practices Act, Fla. Stat. §§501.201, *et seq.*

79.     At all relevant times, Defendant provided goods and/or services and thereby were engaged in trade or commerce, as defined by Fla. Stat. §501.203.

80.     At all relevant times, Plaintiff and the Class were consumers, as defined by Fla. Stat. §501.203.

81. Defendant committed a deceptive and unfair trade practice of designing, manufacturing, marketing, and distributing the iPhone 4, which they knew or should have known was defective, but failed to disclose the defect.

82. The fact that the iPhone 4 was defective and the nature of the defect are material in that such facts would likely affect a reasonable consumer's decision whether or not to buy the iPhone 4.

83. Plaintiff and the Class were aggrieved and suffered losses as a result of Defendant's unfair or deceptive practices in that they purchased the iPhone 4s and contracted with AT&T for cellular telephone and other services when the iPhone 4 was defective and such fact was not disclosed.

84. The actual damages suffered by Plaintiff and the Class were directly and proximately caused by the deceptive and unfair practices of Defendant, as more fully described herein.

85. Defendant's practice and course of conduct, as alleged herein, is likely to mislead a consumer acting reasonably in the circumstances, to the consumer's detriment.

86. Further, Defendant has engaged in an unfair practice that offends established public policy, and is one that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to customers.

87. Upon information and belief, Defendant acted and continues to act in an identical or substantially similar manner with respect to the entire putative Class by adopting and implementing identical or substantially similar designing, manufacturing, marketing, and distributing of the iPhone 4 to consumers despite its defect.

88. Plaintiff has retained the services of the undersigned attorneys who are entitled to a reasonable fee upon prevailing pursuant to Fla. Stat. §501.2105.

- 19 -

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for relief and judgment against Defendant as follows:

A.      For an order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiff and his legal counsel to represent the Class;

B.      Awarding actual damages as provided by Fla. Stat. §501.211(2);

C.      Awarding injunctive relief as provided by Fla. Stat. §501.211(1);

D.      Awarding declaratory relief as provided by Fla. Stat. §501.211(1);

E.      For pre- and post-judgment interest to the Class, as allowed by law;

F.      For reasonable attorneys' fees and costs to counsel for the Class pursuant to Fla. Stat. §501.2105, and if and when pecuniary benefits are obtained on behalf of the Class; and

G.      Granting such other and further relief as is just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff, on behalf of himself and all others similarly situated, hereby demands a jury trial on all issues so triable.

DATED: July 2?, 2010                          ROBBINS GELLER RUDMAN & DOWD LLP
                                              STUART A. DAVIDSON
                                              Florida Bar No. 084824
                                              CULLIN A. O'BRIEN
                                              Florida Bar No. 597341
                                              MARK DEARMAN
                                              Florida Bar No. 0982407


                                              CULLIN A. O'BRIEN

                                              120 E. Palmetto Park Road, Suite 500
                                              Boca Raton, FL 33432
                                              Telephone: 561/750-3000
                                              561/750-3364 (fax)
                                              sdavidson@rgrdlaw.com
                                              cobrien@rgrdlaw.com
                                              mdearman@rgrdlaw.com

- 20 -

FARMER, JAFFE, WEISSING, EDWARDS,
FISTOS & LEHRMAN, P.L.
STEVEN R. JAFFE
Florida Bar No. 390770
SETH M. LEHRMAN
Florida Bar No. 132896
MARK FISTOS
Florida Bar No. 909191
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Telephone:  954/524-2820
954/524-2822 (fax)
steve@pathtojustice.com
seth@pathtojustice.com
mark@pathtojustice.com

Attorneys for Plaintiff and the Class